**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RIM BIO, INC., a Colorado corporation, | : | |
| JINGMING JAMES WANG, an individual, | : | |
| and STEVEN A. SPEAR, an individual, | : | |
| | : | |
| Plaintiffs/Counterclaim Defendants, | : | |
| | : | |
| v. | : | No. 2:23-cv-02618-MAK |
| | : | |
| AVANTOR FLUID HANDLING, LLC, a | : | |
| Massachusetts limited liability company, | : | |
| and VWR INTERNATIONAL HOLDINGS | : | |
| CH PTE. LTD., a Singapore private company | : | |
| limited by shares. | : | |
| | : | |
| Defendants/Counterclaimants. | : | |
| | : | |

**DEFENDANTS/COUNTERCLAIM PLAINTIFFS'**
**EMERGENCY MOTION FOR A PARTIAL STAY OF**
**THE COURT'S JUNE 20, 2025 ORDER PENDING APPEAL**

Pursuant to Federal Rule of Civil Procedure 62(d) and Federal Rule of Appellate Procedure 8(a)(1)(A), Defendants/Counterclaim-Plaintiffs Avantor Fluid Handling, LLC ("U.S. Buyer") and VWR International Holdings CH PTE Ltd. ("PRC Buyer") (collectively, "Avantor" or "Defendants"), hereby move the Court for an order partially staying its June 20, 2025 Order (Dkt. 153) (the "Order") pending the outcome of Defendants' appeal.

Defendants respectfully request that the Court treat this motion on an expedited basis and issue a decision as soon as reasonably possible.

## CERTIFICATE OF CONFERRAL

The undersigned certifies that he conferred with counsel for the Plaintiffs by telephone on June 25, 2025, in regard to the grounds for and relief sought in this motion. Plaintiffs' counsel informed Avantor's counsel by email on June 30, 2025, that Plaintiffs object to the relief sought herein.

## SUMMARY OF ARGUMENT

Avantor respectfully disagrees with certain aspects of the Court's Findings of Fact and Conclusions of Law (Dkt. 152) and the Order and intends to appeal. Among other grounds for appeal, Avantor disagrees with paragraph 1.3 of the Court's Order, which requires the parties to release "all remaining principal and interest in United States Dollars in the Escrow Account to the Plaintiffs as a partial judgment on their breach of contract claim" by July 28, 2025. Avantor bargained for the right to maintain funds in escrow to secure its right to indemnification while it pursued an appeal. The parties agreed that funds would not be released from the Escrow Account until there was a "non-appealable judicial decision with respect to a disputed indemnification claim." *See* Asset Purchase Agreement ("APA"), Tr. Ex. 25, § 2.6(d); RIM China Share Purchase

Agreement ("RIM China SPA"), Tr. Ex. 23, § 2.3(c) (collectively, the "Purchase Agreements").[1]
Paragraph 1.3 of the Court's Order would deprive Avantor of that right, conflicts with the parties'
agreements, and should be stayed pending the outcome of Avantor's appeal.

When deciding whether to issue a stay pending appeal, courts consider four factors: (1)
whether the stay applicant has shown a likelihood of success on the merits; (2) whether the
applicant will be irreparably injured absent a stay; (3) whether a stay would substantially injure
the other parties interested in the proceeding; and (4) where the public interest lies. *In re Revel AC,
Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).
All four of these factors weigh in Avantor's favor.

***First***, Avantor is reasonably likely to prevail on its appeal of the Court's Order requiring
immediate release of the escrow because it bargained for the right to have that escrow preserved
until its indemnification claims were finally resolved.

In addition, Avantor also has a reasonable chance of succeeding on its appeal of the Court's
rulings that several of its indemnification claims were no longer pending as of May 30, 2023. As
the Court held, a qualifying Action under the Purchase Agreements is not limited to litigation
between the parties; it also includes notices of violation, citations, subpoenas or investigations, or
other matters that could be commenced by third parties, so long as those actions could "result[] in
a final binding judgment or order regarding the Pending Claim." *See* Post-Trial Findings of Fact
("FOF") ¶¶ 47-48; Post-Trial Conclusions of Law (Dkt. 152) ("COL") ¶¶ 62-63. Avantor
respectfully submits that it was entitled to retain funds in the Escrow Account based on several
Actions commenced prior to May 2023, including the ongoing regulatory investigations and fines
issued by the local fire brigade and administrative office and the lawsuit with its contractor

---

[1] The Asset Purchase Agreement and RIM China Share Purchase Agreement are defined in notes 3 and 4 of the Court's
Post-Trial Findings of Fact ("FOF") (Dkt. 152).

regarding fire protection repairs, because all of these Actions could have resulted in final orders or judgments regarding Avantor's Pending Claims.

In the alternative, sufficient funds should be preserved in the Escrow Account to satisfy a judgment on Avantor's indemnification claims because Avantor is likely to succeed on its appeal of the Court's ruling that Avantor knew the amount of its liability for Sellers' customs duties and value added taxes ("VAT") violations by May 2023. As of May 2023, Avantor still faced the risk that the customs bureau would commence a criminal investigation and seek penalties of up to five times the amount of duties and VAT that Avantor owed.  As a result, its potential liability at the time was at least $7.5 million, and Avantor had reasonable grounds to preserve all of the escrow.

Moreover, even if Avantor breached the Purchase Agreements by failing to release funds from the Escrow Account in May 2023, Avantor will likely prevail on its appeal of the Court's ruling that such a breach was material because a delay in payment is not a material breach, especially where, as here, the parties' contract does not state that time is of the essence.

Finally, Avantor is also likely to prevail on its appeal of the Court's ruling that its damages for the Illegal Structures Claim[2] are speculative. Pennsylvania recognizes a distinction between uncertainty related to whether ***any*** damages resulted from a breach of contract as opposed to uncertainty as to the extent of such damages. *Spang & Co. v. U.S. Steel Corp.*, 545 A.2d 861, 867 (Pa. 1988) (quoting *Aiken Indus. v. Estate of Wilson*, 383 A.2d 808, 812 (1978)); *Logan v. Mirror Printing Co. of Altoona, Pa.*, 600 A.2d 225, 227 (Pa. Super. 1991) ("Thus, damages are speculative only if the uncertainty concerns the *fact* of damages rather than the *amount*."). Here, there is no dispute that Avantor was damaged by Plaintiffs' failure to comply with applicable laws, and its damages are therefore not speculative. Avantor does not actually need to incur the costs of

---

[2] *See* FOF ¶¶ 143-145 (defining "Illegal Structures Claim").

relocation to receive damages, and its unrebutted expert testimony estimating damages is a sufficient basis for a damages award. *See Sereda v. Ctr. City Acquisitions, LLC*, 222 A.3d 1161, 1166-67 (Pa. Super. Ct. 2019) (awarding damages for repairs based on estimate from expert); *The St. Paul Fire & Marine Ins. Co. v. The Nolen Grp., Inc.*, 2006 WL 2468680, at *4 (E.D. Pa. Aug. 21, 2006) (same).

*Second*, it is more likely than not that Avantor will suffer irreparable harm if the funds are not held in escrow to secure payment of Avantor's indemnification claims. If paragraph 1.3 of the Court's Order is not stayed pending appeal, Avantor will forever lose the bargained for right to have funds in escrow available to satisfy any judgment on its indemnification claims throughout an appeal. *See Nissan Motor Acceptance Corp. v. Sports Car Leasing LLC*, 2021 WL 2555686, at *3 (E.D. Pa. June 22, 2021) ("Where, as here, funds in dispute have been escrowed, courts have held that distribution of the escrow may constitute irreparable harm").

*Third*, Plaintiffs will suffer little to no harm from a contractually agreed upon delay in receiving funds from the Escrow Account. The funds are in escrow, earning interest, and the Plaintiffs will therefore be compensated for any delay in receiving funds they are ultimately awarded after an appeal, if any. Plaintiffs contractually agreed that the funds would be held in escrow until Avantor exhausted its appeals, so this delay is consistent with Plaintiffs' expectations when they signed the Purchase Agreements.

*Fourth*, the public interest is served by holding sophisticated parties to the terms of their negotiated agreements like the Purchase Agreements. The parties provided a mechanism for ensuring payment of any indemnification claims that only terminated once there was "a non-appealable judicial decision with respect to a disputed indemnification claim." It is therefore

consistent with the parties' expectations to hold the funds in escrow until Avantor's appeals are exhausted.

In support of this Motion, Avantor relies on the attached Memorandum of Law, which is incorporated herein by reference.

Date: July 10, 2025

FAEGRE DRINKER BIDDLE & REATH LLP

/s/ Richard E. Coe
Richard E. Coe (Bar No. 94539)
Ian C. Thresher (Bar No. 332931)
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
Tel: (215) 988-2700
Richard.Coe@faegredrinker.com
Ian.Thresher@faegredrinker.com

Nathaniel J. Zylstra (admitted *pro hac vice*)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Tel: (612) 766-6000
Nathaniel.Zylstra@faegredrinker.com

*Counsel for Defendants/Counterclaim-Plaintiffs Avantor Fluid Handling, LLC and VWR International Holdings CH PTE. Ltd.*

## CERTIFICATE OF SERVICE

I, Richard E. Coe, hereby certify that, on July 10, 2025, a true and correct copy of the foregoing Defendants' Emergency Motion for a Partial Stay of the Court's June 20, 2025 Order Pending Appeal was filed electronically via the Court's ECF filing system. This document is available for viewing and downloading from the ECF system and electronic notification has been sent to all counsel of record.

/s/ Richard E. Coe

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RIM BIO, INC., a Colorado corporation, JINGMING JAMES WANG, an individual, and STEVEN A. SPEAR, an individual, | : | |
| | : | |
| Plaintiffs/Counterclaim Defendants, | : | |
| | : | |
| v. | : | No. 2:23-cv-02618-MAK |
| | : | |
| AVANTOR FLUID HANDLING, LLC, a Massachusetts limited liability company, and VWR INTERNATIONAL HOLDINGS CH PTE. LTD., a Singapore private company limited by shares. | : | |
| | : | |
| Defendants/Counterclaimants. | : | |
| | : | |

**DEFENDANTS/COUNTERCLAIM PLAINTIFFS' BRIEF IN SUPPORT OF
THEIR EMERGENCY MOTION FOR A PARTIAL STAY OF
THE COURT'S JUNE 20, 2025 ORDER PENDING APPEAL**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

STANDARD OF REVIEW .................................................................................................. 2

ARGUMENT ........................................................................................................................ 3

I.   Avantor Is Likely to Succeed on the Merits of its Appeal ........................................ 3

    A.   Avantor Is Likely to Prevail on Its Appeal of the Court's Order Requiring Release of the Escrow. ................................................................................... 3

        1.   The Funds Should Be Held in Escrow Until the Conclusion of Avantor's Appeal. ................................................................................ 3

        2.   Avantor's Disputed Claims Remained Pending Claims After May 30, 2023. ................................................................................................ 4

        3.   Avantor's Potential Liability for the Customs and Tax Claim Was Sufficient to Hold Most, if Not All, Funds in Escrow After May 30, 2023. ................................................................................................... 6

    B.   Avantor Is Likely to Prevail on Its Appeal of the Court's Ruling that a Delay in Receiving Disputed Escrow Funds is Material. ........................................ 7

    C.   Avantor Is Also Likely to Prevail on its Argument that the Illegal Structures Claim Damages Are Not Speculative. ......................................................... 9

II.   Avantor Will Suffer Irreparable Harm Absent a Stay Pending Appeal. .................... 12

III.   The Balance of Harms and Public Interest Support Entering a Partial Stay .................... 13

CONCLUSION .................................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Cases**                                                                      **Page(s)**

*Acierno v. New Castle Cnty.*,
   40 F.3d 645 (3d Cir. 1994)...................................................................................14

*Aiken Indus, Inc. v. Estate of Wilson*,
   383 A.2d 808 (Pa. 1978) ...................................................................................10

*Am. Healthcare Admin. Servs., Inc. v. Aizen*,
   285 A.3d 461 (Del. Ch. 2022)...........................................................................12

*Carsek Corp. v. Stephen Schifter, Inc.*,
   246 A.2d 365 (Pa. 1968) .....................................................................................8

*City of Allentown v. O'Brien & Gere Eng'rs, Inc.*,
   1997 WL 256050 (E.D. Pa. May 8, 1997) .......................................................11

*Douglass v. Licciardi Const. Co., Inc.*,
   562 A.2d 913 (Pa. Super. Ct. 1989) ................................................................10

*East Balt LLC v. East Balt US, LLC*,
   2015 WL 3473384 (Del. Ch. May 28, 2015) ...................................................12

*Frazier v. Roofing*,
   2024 WL 4948932 (Del. Ct. Com. Pl. Nov. 26, 2024) .......................................7

*Hackett v. Greyhound Lines. Inc.*,
   2009 WL 1636069 (E.D. Pa. June 11, 2009) ...................................................10

*Hilton v. Braunskill*,
   481 U.S. 770 (1987).............................................................................................2

*In re Petition of Frescati Shipping Co., Ltd.*,
   2016 WL 4035994 (E.D. Pa. July 25, 2016)....................................................11

*In re Revel AC, Inc.*,
   802 F.3d 558 (3d Cir. 2015).................................................................2, 3, 12, 13

*In re Wolf*,
   558 B.R. 140 (Bankr. E.D. Pa. 2016) ...............................................................12

*Julius v. Accurus Aerospace Corp.*,
   2019 WL 5681610 (Del. Ch. Oct. 31, 2019) ...................................................12

*Logan v. Mirror Printing Co. of Altoona, Pa.*,
   600 A.2d 225 (Pa. Super. 1991).......................................................................10

*Meehan v. Connell Anthracite Mining Co.*,
    178 A. 833 (Pa. 1935) ................................................................................................8

*Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Napolitano*,
    85 F.Supp.2d 491 (E.D. Pa. 2000) ..........................................................................15

*Nissan Motor Acceptance Corp. v. Sports Car Leasing LLC*,
    2021 WL 2555686 (E.D. Pa. June 22, 2021) ...........................................12, 13, 14

*Nken v. Holder*,
    556 U.S. 418 (2009) ...........................................................................................2, 13

*Pearlstine v. Fry*,
    55 Pa. D. & C.2d 294 (Pa. Com. Pl. 1971) ..............................................................8

*Preferred Inv. Servs., Inc. v. T & H Bail Bonds, Inc.*,
    2013 WL 3934992 (Del. Ch. July 24, 2013) ...........................................................7

*Prosser*,
    2017 WL 5614901 (D.V.I. Nov. 20, 2017) ............................................................12

*Sereda v. Ctr. City Acquisitions, LLC*,
    222 A.3d 1161 (Pa. Super. Ct. 2019) ...............................................................10, 11

*Spang & Co. v. U.S. Steel Corp.*,
    545 A.2d 861 (Pa. 1988) .................................................................................9, 10

*The St. Paul Fire & Marine Ins. Co. v. The Nolen Grp., Inc.*,
    2006 WL 2468680 (E.D. Pa. Aug. 21, 2006) ........................................................11

*Vector Sec., Inc. v. Stewart*,
    88 F. Supp. 2d 395 (E.D. Pa. 2000) .......................................................................14

*Widmer Eng'g, Inc. v. Dufalla*,
    837 A.2d 459 (Pa. Super. Ct. 2003) .........................................................................7

**Statutes, Rules & Regulations**

Fed. R. App. P. 8(a)(1)(A) .................................................................................................1

Fed. R. Civ. P. 62(d) .........................................................................................................1

**Other Authorities**

15 Williston on Contracts § 46:6 (4th ed.) ........................................................................8

Pursuant to Federal Rule of Civil Procedure 62(d) and Federal Rule of Appellate Procedure 8(a)(1)(A), Defendants/Counterclaim-Plaintiffs Avantor Fluid Handling, LLC ("U.S. Buyer") and VWR International Holdings CH PTE Ltd. ("PRC Buyer") (collectively, "Avantor" or "Defendants"), hereby move the Court for an order partially staying its June 20, 2025 Order (Dkt. 153, "Order") pending the outcome of Defendants' appeal.

Defendants respectfully request that the Court treat this motion on an expedited basis and issue a decision as soon as reasonably possible.

## **INTRODUCTION**

Avantor respectfully disagrees with certain aspects of the Court's Findings of Fact and Conclusions of Law (Dkt. 152) and the Order and intends to appeal. Among other grounds for appeal, Avantor disagrees with paragraph 1.3 of the Court's Order, which requires the parties to release "all remaining principal and interest in United States Dollars in the Escrow Account to the Plaintiffs as a partial judgment on their breach of contract claim" by July 28, 2025. Avantor bargained for the right to maintain funds in escrow to secure its right to indemnification while it pursued an appeal. The parties agreed that funds would not be released from the Escrow Account until there was a "non-appealable judicial decision with respect to a disputed indemnification claim." *See* Asset Purchase Agreement ("APA"), Tr. Ex. 25, § 2.6(d); RIM China Share Purchase Agreement ("RIM China SPA"), Tr. Ex. 23, § 2.3(c) (collectively, the "Purchase Agreements").[1] Paragraph 1.3 of the Court's Order would deprive Avantor of that right, conflicts with the parties' agreements and should be stayed pending the outcome of Avantor's appeal.

As outlined below, all of the relevant factors that courts must consider when deciding whether to issue a stay pending an appeal weigh in Avantor's favor. ***First***, Avantor is likely to

---

[1] The Asset Purchase Agreement and RIM China Share Purchase Agreement are defined in notes 3 and 4 of the Court's Post-Trial Findings of Fact ("FOF") (Dkt. 152).

1

succeed on its appeal of the Court's rulings that several of its indemnification claims were no longer pending as of May 30, 2023 and that the remaining pending claims were not sufficient to hold most, if not all, of the escrowed funds. Avantor is also likely to prevail on its appeal of the Court's ruling that its damages for the Illegal Structures Claim[2] are speculative. **Second**, if the funds are not held in escrow to secure payment of Avantor's indemnification claims, Avantor will be irreparably harmed by the loss of that collateral. **Third**, Plaintiffs will suffer little to no harm from a contractually agreed upon delay in receiving funds from the Escrow Account. **Fourth**, the public interest is served by holding sophisticated parties to the terms of their negotiated agreements like the Purchase Agreements in this case. For all of the foregoing reasons, Avantor respectfully requests that the Court stay paragraph 1.3 of its June 20, 2025 Order pending the conclusion of Avantor's appeal.

## <u>STANDARD OF REVIEW</u>

In deciding whether to grant a stay pending appeal, courts consider the following factors: (1) whether the stay applicant has shown a likelihood of success on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether a stay would substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The "most critical" factors are likelihood of success and irreparable harm. *Id.* at 570 (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). If the moving party establishes those first two factors, courts then "balance the relative harms considering all four factors using a sliding scale approach." *Id.* at 571. Depending on the strength of the movant's case on the merits, "a stay is permissible even if

---

[2] *See* FOF ¶¶ 143-145 (defining "Illegal Structures Claim").

2

the balance of harms and public interest weigh against holding a ruling in abeyance pending appeal." *Id*.

## ARGUMENT

### I.     Avantor Is Likely to Succeed on the Merits of its Appeal

To establish a likelihood of success on the merits, a party need only show that there is a "reasonable chance, or probability, of winning." *Revel*, 802 F.3d at 568 (citation omitted). "While it is not enough [to show] that the chance of success on the merits be 'better than negligible,' the likelihood of winning on appeal need not be 'more likely than not.'" *Id*. at 569 (citation omitted). Avantor is likely to succeed on its appeal of the Court's rulings that: (1) the funds in escrow should be released; (2) the purported breach of the escrow release provisions in the Purchase Agreements was material; and (3) Avantor's damages arising from its Illegal Structures Claim are speculative.

### A.     Avantor Is Likely to Prevail on Its Appeal of the Court's Order Requiring Release of the Escrow.

#### 1.     The Funds Should Be Held in Escrow Until the Conclusion of Avantor's Appeal.

Avantor is likely to prevail on its appeal of the Court's Order requiring immediate release of the escrow because it bargained for the right to have that escrow preserved until its indemnification claims were finally resolved. In the Purchase Agreements, the parties agreed to fund the Escrow Account as a means of ensuring payment of indemnification claims. *See* Tr. Ex. 25, APA § 7.2(c); Tr. Ex. 23, RIM China SPA § 7.2(c) (detailing sources of payment for indemnification claims). The parties further agreed that the funds in escrow would only be released in three ways: (1) a joint instruction, (2) "a non-appealable judicial decision with respect to a disputed indemnification claim," or (3) a binding arbitration decision. Tr. Ex. 25, APA § 2.6(d); Tr. Ex. 23, RIM China SPA § 2.3(c). Only the second means of release could potentially apply to this litigation but does not because the Court's decision is appealable. Avantor disagrees with the

Court's ruling that Avantor's Changzhou Plant Claim, Changzhou Warehouse Claim and Illegal Structures Claim (collectively, the "Disputed Claims") were not Pending Claims[3] that supported maintenance of the escrow after May 30, 2023. Avantor bargained for the right to preserve the escrow while it appeals the Court's ruling that these claims were no longer Pending after May 30, 2023. Because all of these claims are disputed, including with respect to the question of whether they are Pending Claims, no escrowed funds should be released until the dispute is resolved by a non-appealable judgment. Paragraph 1.3 of the Court's Order would deprive Avantor of its right to ensure the Escrow Account is maintained while it challenges the Court's Pending Claims ruling and defeat the purpose of Avantor's bargained-for right.

> ### 2. Avantor's Disputed Claims Remained Pending Claims After May 30, 2023.

The funds should also not be disbursed from the Escrow Account because Avantor is likely to succeed on its appeal of the Court's ruling that the Disputed Claims were not Pending Claims after May 30, 2023. The parties agreed that any funds subject to a Pending Claim for indemnification on the 18-month anniversary of the Closing Date would be held in escrow and would only be released by the three means set forth above. FOF ¶¶ 15-18, *see also* Tr. Ex. 25, APA § 2.6(d); Tr. Ex. 23, RIM China SPA § 2.3(c). The Purchase Agreements further provide that a claim would no longer be treated as a Pending Claim if "no [contractually defined] Action ha[d] been commenced which would result in a final binding judgment or order regarding the Pending Claim" within six months of the original indemnification notice. *Id.* Notably, as the Court held, the parties agreed that qualifying Actions were not limited to litigation between the parties that would resolve an indemnification dispute between them, but also included notices of violation, citations, subpoenas or investigations, or other matters that could be commenced by third parties,

---

[3] *See* FOF ¶ 16 (defining "Pending Claim").

so long as those actions might "result[] in a final binding judgment or order regarding the Pending Claim." FOF ¶¶ 47-48.

Avantor respectfully submits that it was entitled to retain funds in the Escrow Account based on Actions commenced prior to May 30, 2023, including the ongoing regulatory investigations and fines issued by the local Fire Brigade related to the warehouse and the lawsuit with its contractor regarding fire protection repairs. As to the former, the Court concluded that Avantor had not shown how the administrative investigations and penalties "will result in a final binding judgment," Post-Trial Conclusions of Law (Dkt. 152) ("COL") ¶¶ 62-63, and as to the latter, the Court found that the lawsuit with the contractor was "too far attenuated" to qualify "as an Action which would result in a final binding judgment or order regarding" the Plant Claim, *id.* ¶ 67. However, Avantor introduced evidence that the administrative investigations could result in final orders, including fines and orders to demolish the warehouse. Avantor's Proposed Conclusions of Law (Dkt. 140) ("ACOL") ¶ 131. Indeed, at least one of the citations issued expressly threatened ongoing inspections or a potential future judgment in the form of an order requiring "on-the-spot demolition." Avantor's Proposed Findings of Fact (Dkt. 140) ("AFOF") ¶ 87. The dispute with the contractor was also an action directly relevant to the Pending [indemnification] Claim regarding fire protection systems and resulted in a final judgment determining the amount of damages for part of that claim. Avantor submits that, as a matter of law, these types of actions fall within the contractual language outlining when the Escrow Account should be preserved. Therefore, Avantor has a likelihood of success on appeal with respect to its argument that the Disputed Claims were Pending Claims on and after May 30, 2023.

### 3. Avantor's Potential Liability for the Customs and Tax Claim Was Sufficient to Hold Most, if Not All, Funds in Escrow After May 30, 2023.

In the alternative, sufficient funds should be preserved in escrow to satisfy a judgment on the Disputed Claims because Avantor's potential exposure on the Customs and Tax Claim alone was more than $7.5 million on May 30, 2023.[4] The Court's ruling that Avantor knew the amount of its liability for the customs duties and value added taxes ("VAT") Sellers failed to pay before Closing by May 2023—based on a summary table it submitted to the customs bureau—is contradicted by the record.[5] *See* COL ¶ 74. The summary table identified the amount Avantor *hoped* to pay, but there is no evidence in the record that is the amount Avantor *expected* to pay. To the contrary, at the time Avantor made its May 2023 submission to the customs bureau, its last communication with the customs bureau included a statement that the bureau's first step would be to determine whether it was a criminal case or an administrative violation. FOF ¶ 96 (citing Tr. Ex. 120.003). If the customs bureau had determined it was a criminal case, the penalties could have been up to five times the amount owed and/or a prison sentence of greater than ten years. *See* Tr. Ex. 187.012; Zhang Tr. at 43:15-44:14. Therefore, even if Avantor had a reasonable expectation that the amount of additional duties and VAT it proposed to pay would be accepted by the customs bureau—and there is no evidence that it did—its liability for additional customs duties, VAT, and penalties alone would have been approximately $6.6 million ($1.1 million in duties and VAT owed plus $5.5 million in penalties). *See* COL ¶ 74. That amount does not include the substantial fees Avantor likely would have paid to defend itself in a criminal investigation. Therefore, Avantor was justified in withholding more than $7.5 million of the escrow in May 2023

---

[4] Avantor would agree to release $3,171,323.35 from the Escrow Account because the remainder would be sufficient to secure Avantor's claimed damages plus the interest that has accrued and that Avantor expects will accrue on the funds in the Escrow Account before its appeal is resolved.

[5] There is no citation to record evidence to support this conclusion; however, the summary table is Trial Ex. 147. *See* FOF ¶ 97 (citing Tr. Ex. 147)

to cover its liability for the Customs and Tax Claim and had reasonable grounds to preserve all of

the escrow.[6] Avantor did not know its liability to the customs bureau until it received the customs

conclusion in March 2024, at which point the customs bureau confirmed that Avantor would not

be subject to punishment in light of its voluntary disclosure. FOF ¶ 99-100 (citing Tr. Ex. 168).

By that time, Avantor was entitled to continue holding the entire escrow for the Illegal Structures

Claim, which it asserted on March 27, 2024. *See* FOF ¶ 143. Therefore, Avantor is likely to succeed

on its appeal of the Court's ruling that Avantor knew the amount of its liability for the Customs

and Tax Claim by May 2023.

###### B. Avantor Is Likely to Prevail on Its Appeal of the Court's Ruling that a Delay in Receiving Disputed Escrow Funds is Material.

Avantor respectfully submits that, even if it breached the contract by not releasing funds

from the Escrow Account before this litigation commenced, which Avantor disputes, that breach

was not material. A material breach is one that "undermines the core purpose of the agreement"

such that the non-breaching party is "excused from fulfilling their contractual obligations." *Frazier*

*v. Roofing*, 2024 WL 4948932, at *4 (Del. Ct. Com. Pl. Nov. 26, 2024) (citing *Preferred Inv.*

*Servs., Inc. v. T & H Bail Bonds, Inc.*, 2013 WL 3934992, at *11 (Del. Ch. July 24, 2013)). Here,

the core purpose of the contract was the sale of the business, with the payment of $90 million in

cash, the bulk of which went directly to the Sellers and a portion of which was placed in escrow

to cover potential indemnification claims. Accordingly, the contract's core purpose was fulfilled,

and any delay in distribution of the escrow does not change that. *See Widmer Eng'g, Inc. v. Dufalla*,

837 A.2d 459, 468 (Pa. Super. Ct. 2003) (affirming lower court's decision that seller's failure to

pay taxes and amounts owed as adjustments to the purchase price was "not a material breach"

---

[6] In addition to the $6.6 million in potential liability for customs duties and VAT, Avantor had already incurred more than $900,000 in additional indemnifiable costs for its Customs and Tax Claim. *See* FOF ¶ 91 ($727,62439 payment to tax bureau), ¶ 102 ($298,188 in fees paid to PwC).

because the "buyer was not deprived of the benefit of ownership" and any potential benefit buyer

was deprived of could be "adequately compensable by the award of monetary damages"). Any

conclusion that a breach by Avantor was material is also unwarranted here because, at most, that

breach was a delay in the payment of money. A delay in payment is not a material breach especially

where, as here, the parties' contract does not state that time is of the essence. *See* 15 Williston on

Contracts § 46:6 (4th ed.) ("It has been stated that the time for payment of money is not as essential

as the time for other performance and, therefore, a breach of the stipulation for the payment of

money at a certain time will not be considered a material one that negates the entire contract.")

(citing *Meehan v. Connell Anthracite Mining Co*., 178 A. 833, 836 (Pa. 1935)); *Meehan*, 178 A.

at 836 ("[T]he time specified in a contract for payment of a sum of money 'is never an essential

part of an agreement,' in the sense that a breach thereof wholly destroys the contract."); *see also*

*Carsek Corp. v. Stephen Schifter, Inc.*, 246 A.2d 365, 368 (Pa. 1968) ("When it is so easy to insert

the commonly-used phrase 'time to be of the essence' when that is the desired result, we are loathe

to ascribe that result to any other language."); *Pearlstine v. Fry*, 55 Pa. D. & C.2d 294, 298 (Pa.

Com. Pl. 1971) ("Delay in performance alone is not material, unless time is of the essence of the

contract or the delay prejudices the other party in that it prevents his receiving substantial

performance."). Even if Avantor's appeal is unsuccessful, Plaintiffs will eventually receive exactly

what they bargained for—payment of the funds in the Escrow Account plus the interest on those

funds that accumulated while they were in escrow—and Plaintiffs will not be prejudiced by the

delay in payment of a portion of the purchase price. As a result, even were there a breach, it was

not material.  An immaterial breach does not deprive Avantor of a remedy for Plaintiffs' breach of

their indemnification obligations.

C.    **Avantor Is Also Likely to Prevail on its Argument that the Illegal Structures Claim Damages Are Not Speculative.**

It is important to preserve the funds in the Escrow Account as required by the Purchase Agreements because Avantor is also likely to succeed on its appeal of the Court's dismissal of the Illegal Structures Claim without prejudice on the grounds that Avantor's damages are speculative.[7] *See* COL ¶ 95. The Court concluded that Avantor's damages are based on a relocation that has not yet occurred and damages "from a relocation yet to occur are too speculative to permit recovery." *See* COL ¶¶ 93-94. As explained by the Pennsylvania Supreme Court in *Spang & Co.*, "the law recognizes the distinction between the case where uncertainty exists as to whether any substantial damages resulted from a breach of contract, and the case where the uncertainty exists only as to the extent of such damage." *Spang & Co. v. U.S. Steel Corp*., 545 A.2d 861, 868 (Pa. 1988). Here, as in *Spang*, there is no dispute that Avantor was damaged by Plaintiffs' failure to comply with the Laws related to safe production, zoning, construction, land use and fire prevention. The Court found that Sellers built the Illegal Structures before Closing and did not obtain permits for them. FOF ¶ 141. As confirmed by Avantor's expert on Chinese law, that finding alone supports a conclusion that Sellers violated the Laws. *See* Avantor's Proposed Conclusions of Law (Dkt. 140) ("ACOL") ¶ 26. The evidence is similarly undisputed that Sellers also violated the Laws related to safe production and fire prevention by building the Illegal Structures in the fire separation distance and fire engine passage, as confirmed by the Actions commenced by the Changzhou Xinbei District Fire Rescue Brigade, the Changzhou Xinbei District Administrative Office, and the administrative penalties issued by the Fire Brigade. *Id*.; *see also* COL ¶¶ 61-62. Avantor contracted to buy a manufacturing facility that complied with the Laws. It did not receive one, and

---

[7] The Court states that Avantor does not specifically ask it to award damages for the Illegal Structures Claim, *see* COL ¶ 86, but that request is set forth in Count I of Avantor's Amended Counterclaim, *see* Dkt. No. 42 ¶¶ 99-101, and Avantor seeks $5,248,092.67 in damages for that claim, *see* ACOL (Dkt. No. 140) ¶ 36.

the only remedy for that breach that will give Avantor the benefit for which it bargained is relocation of the manufacturing facility. ACOL ¶ 32. As a result, Avantor has established the existence or "fact" of damages, and its damages are not speculative. *Logan v. Mirror Printing Co. of Altoona, Pa.*, 600 A.2d 225, 227 (Pa. Super. 1991) ("Thus, damages are speculative only if the uncertainty concerns the *fact* of damages rather than the *amount*.").[8]

At most, Sellers challenge the *amount* of damages, not the *fact* that such damages exist, arguing that Avantor's damages include upgrades to comply with "International standards." Sellers' Response to Avantor's Proposed Findings of Fact and Conclusions of Law (Dkt. No. 144), at p. 10. The Sellers' argument is inaccurate, *see* AFOF ¶¶ 33-35, as well as an insufficient basis to deny Avantor's request for damages. The law in Pennsylvania is that "the exact amount need not be shown. Where substantial damage has been suffered, the impossibility of proving its precise limits is no reason for denying substantial damages altogether." *Spang & Co.*, 545 A.2d at 867 (quoting *Aiken Indus, Inc. v. Estate of Wilson*, 383 A.2d 808, 812 (Pa. 1978)). This principle is especially true where, as here, Sellers offered no alternative estimate of damages. *See Sereda v. Ctr. City Acquisitions, LLC*, 222 A.3d 1161, 1172 (Pa. Super. Ct. 2019). Avantor is not required to wait until it actually incurs the costs of relocation in order to recover damages. Pennsylvania courts have repeatedly awarded damages based on estimates of costs or expenses of repairs that have not yet been made. *See Sereda*, 222 A.3d at 1166-67 (awarding damages for repairs based on estimate from expert); *Douglass v. Licciardi Const. Co., Inc.*, 562 A.2d 913, 917 (Pa. Super. Ct.

---

[8] Two of the cases cited by the Court are distinguishable because in those cases damages were either contingent on future events that had not yet occurred, *see Hackett v. Greyhound Lines. Inc.*, No. 08-237, 2009 WL 1636069, *4 (E.D. Pa. June 11, 2009) (rejecting claim for damages based on terms of future amendment to collective bargaining agreement when negotiations for amendment had not even begun), or there was evidence that the harm was caused by factors other than the alleged breach, *see Logan*, 600 A.2d at 227 (describing argument that plaintiff would have won election if defendant had run one additional advertisement as "entirely too speculative."). Here, there is no question that Avantor has already been harmed and that harm was caused by Sellers' construction of the Illegal Structures prior to Closing. FOF ¶ 141.

1989) (affirming award of damages based on estimates from an insurance guide list); *The St. Paul Fire & Marine Ins. Co. v. The Nolen Grp., Inc.*, 2006 WL 2468680, at \*4 (E.D. Pa. Aug. 21, 2006) (awarding damages for repairs to cleanrooms based on expert's estimated costs of repairs); *In re Petition of Frescati Shipping Co., Ltd.*, 2016 WL 4035994, at \*85 (E.D. Pa. July 25, 2016) (vacated and rev'd in part on other grounds) ("Frescati is entitled to damages in the amount of $438,542.25 for the estimated cost of repairs to the vessel's hull that were never completed."). Indeed, Avantor's actual costs may not equate to replacement costs. If Avantor builds its replacement manufacturing facility using materials from international brands, the actual cost of that facility is likely to substantially exceed the estimate it submitted in this case, which is based on the cost to replace the existing facility using domestic materials. AFOF ¶¶ 17-18, 112-122, 157; ACOL¶¶ 30-36. The estimates of replacement costs submitted by Avantor were made by qualified experts with significant experience in the industry, AFOF ¶¶ 17-18, and were based on data and their experience from the construction of similar facilities, AFOF ¶¶ 112-118. This is precisely the type of estimate that Pennsylvania courts have repeatedly found sufficient to establish the amount of Avantor's damages. *See Sereda*, 222 A.3d at 1166-67 (awarding damages for repairs based on estimate from expert); *The St. Paul Fire & Marine Ins. Co.*, 2006 WL 2468680, at \*4 (same).

Avantor presented unrebutted evidence of a proper measure of damages and therefore has a strong likelihood of success on its appeal of the Court's dismissal of its Illegal Structures Claim. ACOL ¶¶ 30-36. *City of Allentown v. O'Brien & Gere Eng'rs, Inc.*, 1997 WL 256050, at \*24 (E.D. Pa. May 8, 1997) ("Thus, plaintiff is entitled to recover an amount of damages that will restore the economic value of the property lost, measured by the cost of correcting the defects caused by defendant's conduct or by the cost of replacing the property.").

## II.    <u>Avantor Will Suffer Irreparable Harm Absent a Stay Pending Appeal.</u>

The irreparable harm that Avantor will suffer absent a stay also weighs in favor of the Court granting a stay. *Revel*, 802 F.3d at 568. The moving party need not show that harm is certain, only that harm is "more apt to occur than not." *Id*. at 569. Avantor will suffer irreparable harm if paragraph 1.3 of the Court's Order is not stayed pending appeal because it will forever lose the bargained for right to have funds in escrow to satisfy its indemnification claims throughout an appeal. *See East Balt LLC v. East Balt US, LLC*, 2015 WL 3473384, at *4 (Del. Ch. May 28, 2015) ("Funds are placed in escrow to provide a convenient source of money that may be owed."); *Am. Healthcare Admin. Servs., Inc. v. Aizen*, 285 A.3d 461, 497 (Del. Ch. 2022) ("The Buyer bargained for an escrow account to secure the Company's financial obligations to the Buyer."); *Julius v. Accurus Aerospace Corp.*, 2019 WL 5681610, at *6 (Del. Ch. Oct. 31, 2019) ("Buyers deposited funds with an escrow agent for the exclusive purpose of satisfying Accurus in the event Accurus suffered indemnifiable losses.").

Courts routinely hold that the premature distribution of funds in an escrow account can constitute irreparable harm. *Nissan Motor Acceptance Corp. v. Sports Car Leasing LLC*, 2021 WL 2555686, at *3 (E.D. Pa. June 22, 2021) ("Where, as here, funds in dispute have been escrowed, courts have held that distribution of the escrow may constitute irreparable harm"); *In re Wolf*, 558 B.R. 140, 144, n.5 (Bankr. E.D. Pa. 2016) (noting that "when funds in dispute have been escrowed, courts have held that distribution of the escrow may constitute irreparable harm"); *Prosser*, 2017 WL 5614901, at *9 (D.V.I. Nov. 20, 2017) (same). In *Nissan*, the plaintiff filed a motion for a stay of proceedings pending appeal after the court granted summary judgment to the defendant. *Nissan*, 2021 WL 2555686 at *2. The plaintiff argued that it would suffer irreparable harm "if the Court releases the funds held in escrow" because "the funds will likely be dissipated quickly by

[defendant] and never recoverable again." *Id*. at *3. The court noted that since it had "no information on the financial status of [defendant] and cannot predict whether a year from now it would have sufficient funds to satisfy the potential judgment . . . the wise move is to preserve the status quo" and maintain the funds in escrow. *Id*.

Irreparable harm would likewise result from the release of the escrow here. In the absence of a stay, Avantor will lose its bargained for ability "to secure the Seller's and Principals' indemnification obligations to the Buyer under the Purchase Agreement." AFOF ¶ 51. Avantor has no information about the financial condition of the Plaintiffs and cannot predict what they will do with the funds in escrow if they are released. Avantor bargained for the right to collect a judgment from funds in escrow, so it did not have to consider Plaintiffs' financial condition or ability to pay a judgment. In the absence of a stay, Avantor faces the risk of either incurring substantial additional costs associated with collecting a judgment from the Plaintiffs or the risk of not being able to collect a judgment at all—risks it negotiated to avoid by including the escrow provisions in the Purchase Agreements. Should the Court refuse to stay its Order, Avantor's bargained for right to have funds available to secure its right to payment will be lost forever. As a result, the Court should "preserve the status quo" by staying the release of the escrow. *Nissan*, 2021 WL 2555686 at *3.

### III.    **The Balance of Harms and Public Interest Support Entering a Partial Stay.**

"Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest." *Nken v. Holder*, 556 U.S. 418, 435 (2009). In other words, "Courts weigh the likely harm to the movant (absent a stay) (factor two) against the likely irreparable harm to the stay opponent(s) if the stay is granted (factor three)." *Revel*, 802 F.3d at 569.

Here, the absence of harm to Plaintiffs if a stay is granted weighs in favor of a stay. If the Court stays its Order pending appeal, the funds will remain in escrow, accruing interest, and the Plaintiffs will be fully compensated for any delay in receiving these funds if they succeed on the appeal. In other words, the only "harm" that Plaintiffs will suffer is a delay in receiving the funds in escrow. This delay is compensable by money damages (interest) and therefore does not constitute irreparable harm as a matter of law. *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."). Plaintiffs agreed that the funds would be held in escrow until Avantor exhausted its appeals, so this delay is consistent with Plaintiffs' expectations when they signed the Purchase Agreements. The Court should therefore determine that the balance of harms weighs in favor of granting the stay. *See Nissan*, 2021 WL 2555686, at *3 (holding that "Sports Car Leasing *has not made any showing of an immediate need for [these] funds* and considering that releasing the funds may make it impossible for Nissan to collect a judgment if it is successful on appeal, the Court finds that the third factor also weighs in favor of Nissan") (emphasis added).

Similarly, the public interest favors a stay pending appeal. It is well-settled that it is in the "public interest to uphold an agreement freely entered into by the parties." *Vector Sec., Inc. v. Stewart*, 88 F. Supp. 2d 395, 401 (E.D. Pa. 2000) (citation omitted) (finding that public interest supported granting preliminary injunction enforcing restrictive covenant). Here, the parties provided a mechanism for ensuring payment of any Pending Claims that only terminates once there is "a non-appealable judicial decision with respect to a disputed indemnification claim." FOF

14

¶ 18. If the Court does not enforce the bargained-for indemnification agreement between these sophisticated parties, "the court will be undermining the legitimate business expectations not only of the parties here, but of all contracting parties . . . the knowledge that valid and enforceable contractual agreements will be enforced in courts of competent jurisdiction [allows] our competitive marketplace to thrive." *Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Napolitano*, 85 F.Supp.2d 491, 499 (E.D. Pa. 2000) (citation omitted) (finding that public interest supported granting preliminary injunction enforcing restrictive covenant). Thus, the fourth factor also weighs in favor of granting a stay.

## <u>CONCLUSION</u>

For all these reasons, Avantor respectfully requests that the Court stay enforcement of paragraph 1.3 of its June 20, 2025 Order pending the outcome of Defendants/Counterclaim-Plaintiffs' appeal.

Date: July 10, 2025           FAEGRE DRINKER BIDDLE & REATH LLP

/s/ *Richard E. Coe*
Richard E. Coe (Bar No. 94539)
Ian C. Thresher (Bar No. 332931)
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
Tel:  (215) 988-2700
Richard.Coe@faegredrinker.com
Ian.Thresher@faegredrinker.com

Nathaniel J. Zylstra (admitted *pro hac vice*)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Tel:  (612) 766-6000
Nathaniel.Zylstra@faegredrinker.com

*Counsel for Defendants/Counterclaim-Plaintiffs*
*Avantor Fluid Handling, LLC and VWR*
*International Holdings CH PTE. Ltd.*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RIM BIO, INC., a Colorado corporation, | : | |
| JINGMING JAMES WANG, an individual, | : | |
| and STEVEN A. SPEAR, an individual, | : | |
| | : | |
| Plaintiffs/Counterclaim Defendants, | : | |
| | : | |
| v. | : | No. 2:23-cv-02618-MAK |
| | : | |
| AVANTOR FLUID HANDLING, LLC, a | : | |
| Massachusetts limited liability company, | : | |
| and VWR INTERNATIONAL HOLDINGS | : | |
| CH PTE. LTD., a Singapore private company | : | |
| limited by shares. | : | |
| | : | |
| Defendants/Counterclaimants. | : | |
| | : | |

## [PROPOSED] ORDER

AND NOW, this _____ day of _____, 2025, upon review of Defendants/Counterclaim Plaintiffs' Emergency Motion for a Partial Stay of the Court's June 20, 2025 Order Pending Appeal, Plaintiffs' Opposition thereto, and the arguments presented during oral argument, if any, it is hereby **ORDERED** that the Motion is **GRANTED**.

Paragraph 1.3 of the Court's June 20, 2025 Order is **STAYED** pending resolution of Defendants' appeal to the United States Court of Appeals for the Third Circuit. Absent agreement of the parties, all remaining principal and interest in the Escrow Account shall be maintained in the Escrow Account pending further Order of the Court.

**BY THE COURT:**

_____
**Mark A. Kearney, U.S.D.J.**